**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 04-30057-01** |
| **VERSUS** | * | **JUDGE JAMES** |
| **EDDIE NELSON RUIZ** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a

Motion to Vacate, Set Aside, or Reduce Sentence filed by defendant EDDIE NELSON RUIZ

("Ruiz") (Document No. 37).  The Government filed an opposition to the motion (Document No.

39), and an evidentiary hearing was held on March 16, 2007.  For reasons stated below, it is

recommended that the motion be **DENIED**.

## BACKGROUND

On April 4, 2005, Ruiz pled guilty to possession with intent to distribute 50 grams of

methamphetamine or 500 grams or more of a mixture or substance containing a detectable

amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  On

September 2, 2005, the government filed a motion for a departure from the sentencing guidelines

and, on September 6, 2005, Ruiz was sentenced to 146 months imprisonment.

Based on a review of the record in this matter, Ruiz's vehicle was stopped by Ouachita

Parish Sheriff's Deputy Feltz ("Feltz") while traveling east on Interstate 20 for speeding and an

improper lane change.  During the stop, Feltz noticed the smell of fresh paint coming from the

vehicle, fresh Bondo dripping from underneath the vehicle, and white paint not matching the rest

of the car.  After requesting and being granted consent to search the vehicle, Feltz found thirteen

packages wrapped in duct tape located in a false compartment under the seat.  The substances in

the packages were later examined by the Crime Lab and found to be 9,590.8 grams of methamphetamine and 5,077.2 grams of cocaine hydrochloride.

According to Ruiz's Pre-sentence Investigation Report (P.S.R.), after the above amounts of methamphetamine and cocaine are converted to their marijuana equivalent as per U.S.S.G. § 2D1.1, possession of a total of 20,197.04 kilograms of marijuana equates to a base offense level of thirty six.  However, significantly, the P.S.R. also states that, of the 9,590.8 grams of methamphetamine, which alone equate to an offense level of thirty six, 8,411.3 grams were determined by the Crime Lab to be at least 90% pure, thereby meeting the definition of ICE. U.S.S.G.. §2D1.1.  Therefore, the P.S.R. recommended a base offense level of 38, which is what the guidelines instruct for possession of at least 1.5 kilograms or more of ICE or Methamphetamine Actual.  Upon recommending a two-point reduction for accepting responsibility and a one-point reduction for cooperation and pleading guilty, the P.S.R. recommended a total offense level of 35.

At the sentencing, after asking both Ruiz and his counsel if they had any objections to the factual statements contained in the P.S.R., the District Judge adopted the statements of fact found therein.  Based on such facts, the judge found an applicable offense level of 35 and an applicable criminal history of IV.  Accordingly, the judge found the applicable Guidelines range to be from 292-365 months of incarceration.  However, due to the substantial assistance Ruiz provided the Government in this matter, the Judge deviated from the Guidelines and imposed a sentence of 146 months imprisonment.

On November 28, 2005, Ruiz filed an out of time Notice of Appeal, which the Court denied (Document No. 35-1).  Subsequently, on August 11, 2006, Ruiz filed the instant 28 U.S.C. § 2255 motion claiming (1) improper sentencing under the United States Supreme Court's

holding in *United States v. Booker*, 543 U.S. 220 (2005), which rendered the United States Sentencing Guidelines advisory; (2) the P.S.R. incorrectly converted the methamphetamine to ICE due to the fact that Ruiz was never indicted on ICE nor did he plead or admit to any facts involving ICE; and (3) ineffective assistance of counsel due to his counsel's failure to object to the ICE enhancement recommended by the P.S.R., failure to object to the P.S.R.'s conversion of the methamphetamine to ICE, failure to notice an appeal regarding the above issues.

At the hearing held in this matter on March 16, 2005, the evidence adduced was as follows:

According to Ruiz's trial attorney, Val Salomon ("Salomon"), prior to the sentencing, he visited with Ruiz, reviewed with him the Rule 11 plea package, and "[e]xplained how an appeal – you know, also explained that an appeal would not lie from anything that occurred unless something quite untoward happened within the sentencing process." Tr. at p. 10. *See also* Tr. at pp. 45-46 (testimony of Mr. Leija). On the day of sentencing, Salomon discussed with Ruiz in the jail area that a motion had been filed by the Government for a downward departure, which ordinarily results in a cut in the Guidelines sentence by one-half. Tr. at p. 11. According to Salomon, after sentencing, he again spoke with Ruiz briefly, at which time Ruiz indicated that he was pleased with his sentence of 146 months, since the low end of the Guidelines range had been 25 years, and also discussed with Ruiz "that there would be no appeal that lies from this, since not only is it everything we wished for, but perhaps more." Tr. at p. 11. Salomon testified that Ruiz did not request an appeal at that time. Tr. at p. 12.

Salomon did not recall any further specific conversation with Ruiz after the September 6, 2005 sentencing. Tr. at p. 12. However, he did recall that Ruiz had some questions about the ICE aspect of his sentencing based on the purity of the methamphetamine at issue either "before

sentencing or down the line in some of those letters he supplied to me." Tr. at p. 13.  Subsequent

to the sentencing, in a letter dated September 8, 2005, Salomon wrote to Ruiz at the West Carroll

Detention Center in Epps, Louisiana:   "As you are aware, and as the Judge explained,[1] there are

certain time limits for you to appeal your matter.  You have not requested an appeal, and I have

not recommended one.  In light of how your matter turned out, I can see nothing to be gained

from an appeal, and I see no issues to appeal." Exhibit B-3.  According to Salomon, this was a

summary of the conversation he had with Ruiz on September 6, 2005.  Tr. at p. 16.  Salomon

testified that he told Ruiz, as he tells every client, that the time limit for appeal is 10 days from

the written judgment. Tr. at p. 16.  Salomon testified that he probably did not explain to Ruiz

about how the 10 days are counted and did not recall whether he told him about the additional 30

day period for filing an appeal notice based on good cause shown, but that he usually informs his

clients of this deadline.  Tr. at pp. 16-17.

In a letter dated September 13, 2005, Salomon again wrote to Ruiz at the West Carroll

Detention Center and stated: "I was reviewing your file, and I noticed a letter of April 4, 2005.  I

do not believe I responded to a couple of your inquiries." Exhibit B-4.  According to  Salomon,

he was likely reviewing the file on that date "[j]ust probably getting ready to close it."  Tr. at p.

18.

In a hand-written letter dated September 16, 2005, from Ruiz to Salomon from Salomon's

file, it states:  "I am in receipt of and thank you for your correspondence." Exhibit B-5; Tr. at p.

19.  Furthermore, it states: "[i]n your letter you recommended that I not appeal but I'm curious.

What do you recommend me to do?  We both (all) know that all the aspects of the automobile

---

[1]The transcript of the sentencing hearing does not reflect that the judge explained the
delays for filing an appeal.

4

search leading to my arrest were Constitutional incorrect from the very first instant of my stop."
Exhibit B-5.   The letter concludes: "[p]lease Mr. Salomon answer me this questions and I need
you to give me your most valuable advice concerning this important (to me) matter because I feel
kind of confused."  *Id*.  According to Salomon, Ruiz's letter was probably referring to his letter
of September 8, 2005, to Ruiz.  Tr. at p. 19.  Mr. Salomon's interpretation of the letter was that
"he was unhappy because, you know, there wasn't a motion to suppress to set aside all his
worries and all his troubles," which Salomon considered was not supported by the facts or the
law.  Tr. at p. 21.

In a hand-written letter dated September 19, 2005, again from Ruiz to Salomon from
Salomon's file, it states:  "I never heard your opinions or comments concerning my traffic stop.
Personally I do believe that the government should have focused on both parts from the
beginning because my rights were violated.  I don't believe it's legal that a Narcotics Officer has
authority to stop any body on the highway."  Exhibit B-6; Tr. at p. 22.  The letter concludes: "I
would like to know your comments concerning this matter and please give me a good advice."
Exhibit B-6.  According to Salomon, the letter was probably in response to his letter to Ruiz of
September 13, 2005.  Tr. at p. 22.  Salomon explained that the fact that the envelope addressed to
him and postmarked September 20, 2005, from Epps, Louisiana, where the West Carroll
Detention Center is located, was attached to the letter was "just happenstance," and not by virtue
of office policy, and the failure to have an envelope attached to a letter received does not mean it
was not mailed.  Tr. at pp. 23-24

In a hand-written letter also dated September 19, 2005, from Ruiz to Salomon from
Salomon's file, it states:  "I'am writing to you in concern about my court transcripts.  I need to
know how long is it going to take to get them because due to my case I'am in need of those

documents please to over look some mistakes in my case on Criminal No. 04-30057-01."
Exhibit B-7; Tr. at pp. 25-26.  It states further:  "and I need to know after getting these
documents are you still going to be my lawyer throughout any other matter I might have in my
case as well sir?" Exhibit B-7.  Attached is an envelope addressed to Salomon and postmarked
September 20, 2005, from Epps.  *Id*.  Salomon guessed that Ruiz had called his office and
spoken to a paralegal or receptionist "and asked something about transcripts."  Tr. at p. 25.

      In a letter dated September 16, 2005, Salomon wrote to Ruiz at the West Carroll
Detention Center the following: "I am in receipt of your correspondence.  I am not in a position
to take an appeal of your matter for several reasons.  First, I have not been retained to do so.  As a
result, I am not in a position to take the steps you request."  Exhibit A-2; Tr. at p. 27.  Salomon
states further:  "[m]ore importantly, I can see no issues of any substance to pursue on appeal."
Exhibit A-2.  In a P.S., Mr. Salomon states: "[a]s you may remember, we discussed this both
prior and subsequent to your sentencing.  I stand by my advice, position and recommendation."
*Id*.  According to Salomon, the position he was referring to was "that no appeal lies here."  Tr. at
p. 27.

      In his evidentiary hearing testimony, Salomon speculated that the correspondence
referenced in the September 16th letter that, according to Salomon, was likely was mailed on that
date or the next day, was Ruiz's correspondence dated September 19th (and post-marked
September 20th) wherein he asks about transcripts, although Salomon denied that a client request
for transcripts would have been interpreted by him as a request for an appeal or cause him to go
out and file a notice of appeal.  Tr. at pp. 27, 41.  Salomon also speculated that his letter dated
September 16th may have been in response to a telephone call from Ruiz.  Tr. at p. 28.  According
to Salomon, "[h]e must have called and asked for something, because I want to say he made

some telephone calls." Tr. at p. 28.  In Salomon's view, the call or correspondence that he was responding to likely concerned transcripts and may have been "hinting" about an appeal.  Tr. at pp. 27-29.  Salomon also speculated that his letter dated September 16th may have been in response to Ruiz's letter, also dated September 16, 2005, asking for advice, and that the September 16th date on his letter in response to Ruiz was a typo.  Tr. at p. 40.

Salomon admitted that he would just be guessing at this point as to what correspondence from Ruiz he was referring in his letter dated September 16th.  Tr. at pp. 29-30, 43-44.  However, he denied that he ever received a letter from Ruiz in which Ruiz specifically said that he wanted to appeal until Ruiz's November 2005 correspondence.  Tr. at pp. 29-30.  Salomon did admit that it was possible that he received a letter from Ruiz that was not placed in Ruiz's file, but still he did not have a recollection of a specific request for an appeal, either oral or in writing, prior to November of 2005.  Tr. at pp. 38-40.  Also, according to Salomon, while he did not have a written contract with Ruiz, he was not hired to do an appeal.  Tr. at pp. 5, 27.  Furthermore, according to Salomon,  if Ruiz had made a specific request for an appeal, he would have "asked him for money, you know, whether he was going to retain us.  And then, two, if not, I would send him a  CJA-23 form."  Tr. at p. 41.

In a letter dated November 21, 2005, from Ruiz addressed to the Clerk of Court and stamped "received" on November 28, 2005, it states: "I would like to know if an appeal notice was ever filed.  I instructed my attorney to do so yet I've heard nothing.  If one has not been filed please file my notice that is enclosed."  (Document No. 34). The notice of appeal was also stamped "received" on November 28, 2005.  (Document No. 34).

In a letter postmarked November 22, 2005, and received by Salomon in late November of 2005, Ruiz wrote from the federal prison in Yazoo City, Mississippi: "I would like to know if

you have filed an appeal.  If not I would ask that would do so.  We may find something.  It doesn't hurt to try." Exhibit B-11; Tr. at p. 31.  In response, Salomon wrote to Ruiz in a letter dated December 7, 2005, after referencing Ruiz's "recent filings": "I am enclosing a copy of my mid- to late-September correspondence to you.  It reiterates my opinion that an appeal in your instance would not present any substantive issues nor would it be successful." Exhibit B-12. Thereafter, Salomon assisted Ruiz in obtaining  transcripts of the district court proceedings over the course of the next several months.  Exhibits B-13, B-14, B-15, B-16, B-17, B-18, B-19, B-20, B-21; Tr. at pp. 34-37.

## LAW AND ANALYSIS

The Law of § 2255 Actions

There are four grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack". 28 U.S.C. §2255; *United States v. Cates*, 952 F.2d 149, 151 (5th Cir. 1992), *cert. den*., 504 U.S. 962 (1992).  The scope of relief under §2255 is consistent with that of the writ of habeas corpus.  *Cates*, 952 F.2d at 151; *see also United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996).

Only cognizable under 28 U.S.C. § 2255 are jurisdictional and constitutional issues and in rare circumstances non-constitutional and non-jurisdictional errors, not raised on appeal, which could result in a "complete miscarriage of justice." *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998); *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1996); *United States v.*

*Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

In *United States v. Vaughn*, 955 F.2d 367 (5th Cir. 1992), the United States Court of

Appeals for the Fifth Circuit stated as follows:

> Relief under 28 U.S.C. § 2255 is reserved for transgressions of
> constitutional rights and for a narrow range of injuries that would
> not have been raised on direct appeal and would, if condoned,
> result in a complete miscarriage of justice. *U.S. v. Capua*, 656
> F.2d. 1033, 1037 (5th Cir. 1981). Non-constitutional claims that
> could have been raised on direct appeal but were not may not be
> asserted in a collateral proceeding.

Collateral review is fundamentally different from and may not replace a direct appeal.

*United States v. Frady*, 102 S.Ct. 1592-93 (1982); *United States v. Shaid*, 937 F.2d 228, 231 (5th

Cir. 1991) (*en banc*), *cert. denied*, 112 S.Ct. 978 (1992). Thus, even if the issues are

constitutional or jurisdictional, the defendant may be procedurally barred from raising them

collaterally. A defendant may not raise an "issue [constitutional or jurisdictional in nature] for

the first time on collateral review without showing both 'cause' for his procedural default, and

'actual prejudice' resulting from the error." *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir.

1994) (*citing Shaid*, 937 F.2d 228, 232 (5th Cir. 1991), *en banc, cert. denied*, 112 S.Ct. 978

(1992)); *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995).

Because it is uncontested that Ruiz did not file a direct appeal raising any of his current

claims, he is procedurally barred from raising such claims collaterally in the context of a § 2255

motion unless he can show 'cause' and actual prejudice.' *Segler*, 37 F.3d at 1133; *Walker*, 68

F.3d at 934. Although a showing of ineffective assistance of counsel may establish cause and

prejudice, *U.S. v. Acklen*, 47 F.3d 739, 742 (5th Cir. 1995), the undersigned finds that Ruiz has

failed to make such a showing.

<u>Ineffective Assistance of Counsel</u>

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2255. *United States v. Gaudet*, 81 F. 3d 585, 589 (5th Cir. 1996); *United States v. Gipson*, 985 F. 2d 212 (5th Cir. 1993); *United States v. Navejar*, 963 F. 2d 733, 735 (5th Cir. 1992). However, not all ineffective assistance of counsel claims are cognizable for the first time on collateral attack absent proof of "manifest injustice." Substandard advice of counsel rises to a constitutional violation only if the substandard conduct deprives the defendant of his constitutional right to a fair trial or deprives the defendant of some other constitutional right. To prevail on a claim of ineffective assistance of counsel, a defendant must show both that his counsel's actions fell below an objective standard of reasonableness and that the ineffectiveness of counsel prejudiced him. *Strickland v. Washington,* 466 U.S. 668 (1984).

If the defendant does not make a sufficient showing as to one section of the test, the other prong need not be considered. *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997). Furthermore, the parts of the test need not be analyzed in any particular order. *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997). In addition, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

In applying the first part of the *Strickland* test, a court should presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. *Strickland* at 689-690. The defendant must show that the performance of counsel fell "outside the wide range of professionally competent assistance." *Strickland* at 690; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994).

To establish prejudice, the second prong, the defendant must demonstrate that the attorney's actions "were so serious as to render the proceedings unreliable and fundamentally

unfair." *United States v. Saenz-Forero*, 27 F.3d 1016, 1019 (5th Cir. 1994); *Murray v. Maggio*, 736 F. 2d 279 (5th Cir. 1984).  Unreliability and unfairness do not result "if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitled him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993); *See also Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995).  Accordingly, counsel cannot be ineffective for failing to raise a meritless claim. *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995).

### A. Counsel's Failure to Object on *Booker* Grounds

Ruiz alleges that his attorney failed to object to the ICE enhancement recommended by the P.S.R. and adopted by the District Judge.  Ruiz claims that his attorney should have objected to the enhancement on *Booker* grounds.  In *United States v. Booker*, 543 U.S. 220, 244 (2005), the Supreme Court held that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." (emphasis added).  According to Ruiz, because he was never indicted on nor did he plead or admit to any facts involving ICE, the ICE enhancement to his sentence violated his Sixth Amendment rights based on the holding in *Booker*.  Ruiz claims that the facts to which he pleaded guilty would result in an offense level of 36 and that, given that the District Judge sentenced him at one-half of the lower end of the Guideline range, he would have received a sentence of 117 months rather than 146 months.

However, Ruiz's claim is fatally flawed in that, while his sentencing range was enhanced based on facts found by the sentencing judge, there is no indication that the District Judge sentenced Ruiz under the pre-*Booker* mandatory guidelines scheme.  "*Booker* error occurs when the sentencing judge *bound by mandatory United States Sentencing Guidelines* . . . increases the

Guidelines sentencing range based on facts not found by the jury or admitted by the defendant."

*U.S. v. Jackson*, 2007 WL 671084, *12 (5th Cir. March 2, 2007) (emphasis added).  "But under

*Booker*, 'with the mandatory use of the guidelines excised, . . . [t]he sentencing judge is entitled

to find by a preponderance of the evidence all the facts relevant to the determination of the

Guideline[s] sentencing range.'"  *Id.* (quoting *U.S. v. Mares*, 402 F.3d 511, 518 (5th Cir. 2005));

*U.S. v. Roberson*, 2005 WL 3448049, *2 (W.D.La. 2005).  Ruiz was sentenced under the post-

*Booker* advisory Guidelines system.  This is evidence not only from the *post*-Booker timing of

Ruiz's sentencing and the lack of any indication in the sentencing transcript that the Judge

considered the Guidelines mandatory, but also by the Judge's decision to depart downward from

the guidelines sentencing range in Ruiz's case.  Therefore, because there was no *Booker* error in

Ruiz's sentencing, any objection on such ground would have been meritless.  As counsel cannot

be ineffective for failing to raise a meritless claim, Ruiz's counsel's decision not to object did not

fall below an objective standard of reasonableness.  See *Hargett*, 61 at 415.

 Moreover, although Ruiz's sentencing range was enhanced based on judge-found facts,

the sentence that was ultimately imposed was below that which he could have received based the

facts admitted by him.  The written factual basis supporting Ruiz's guilty plea states that 9,590.8

grams of methamphetamine and 5,077.2 grams of cocaine were found in Ruiz's vehicle.  By his

signature on the plea colloquy, Ruiz stipulated that these facts adequately describe his role in the

offense of possession with the intent to distribute 50 grams of methamphetamine or 500 grams or

more of a mixture or substance containing a detectable amount of methamphetamine for the

purposes of establishing his guilt beyond a reasonable doubt.  As the P.S.R. states, based on these

facts, without the ICE enhancement, Ruiz was subject to a base offense level of 36.  *See* P.S.R.;

U.S.S.G. §2D1.1.  Taking into account the three-point reduction recommended by the P.S.R. and

adopted by the District Judge, Ruiz's total offense level would be 33.  A base offense level of 33 combined with Ruiz's criminal history category of VI results in an applicable Guidelines range of 235-293 months of incarceration.  Thus, Ruiz's sentence of 146 months imprisonment not only does not exceed the maximum guidelines sentence of 293 months, but is well below the minimum guidelines sentence.  The sentence is also well below the statutory maximum sentence of life in prison.  21 U.S.C.A. § 841(b).  Accordingly, because Ruiz has failed to establish *Booker* error in his sentencing, it is recommended that his motion on this ground be DENIED.

    B.  Counsel's Failure to Challenge Factual Findings in the Pre-Sentence Investigation Report

       Ruiz next contends that his attorney should have objected to the P.S.R.'s incorrect conversion of the methamphetamine, to which he pled guilty, to ICE.  Ruiz again claims that he never pled to nor admitted to any facts involving ICE and, therefore, that his attorney should have objected on such grounds.  It is not clear to this Court whether Ruiz is merely restating his *Booker* claim in different terms or if he is challenging the facts stated in the P.S.R.  If it is the former, the above discussion indicates that such a claim is meritless; if it is the latter, the conclusion remains the same.

       The only support cited by Ruiz for the proposition that his attorney should have objected to the P.S.R's ICE finding is the fact that he neither pled nor admitted to any facts involving ICE and therefore should not have been sentenced based on such facts.  Such a contention is woefully insufficient to establish that the factual statements in the P.S.R. are inaccurate if Ruiz is making such a claim.  In the wake of *Booker*, "[t]he sentencing  judge is entitled to find by a preponderance of the evidence all the facts relevant to the determination of a Guideline sentencing range and all facts relevant to the determination of a non-Guidelines sentence." *U.S. v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005); *see also U.S. v. Thomas*, 870 F.2d 174, 176 (5th Cir.

1989)  ("The district court may consider a variety of evidence not limited to amounts seized or specified in the indictment in making its findings.")); *U.S. v. Burke*, 431 F.3d 883, 888 (5th Cir. 2005) (noting that the sentencing guidelines allow the sentencing judge to consider types and quantities of drugs that are not mentioned in the indictment)); U.S.S.G. § 2D1.1 comment n.12. Furthermore, "the court can adopt facts contained in a PSR without inquiry, if those facts had an adequate evidentiary basis and the defendant does not present rebuttal evidence." *U.S. v. Puig-Infante*, 19 F.3d 929, 943 (5th Cir. 1994) (citing *U.S. v. Rodriguez*, 897 F.2d 1324, 1328 (5th Cir. 1990)).  "The defendant has the burden of showing that information that the district court relied on in sentencing is materially untrue." *Id.*

Ruiz's P.S.R. states that, of the 9,590.8 grams of methamphetamine attributed to him, the North Louisiana Criminalistics Laboratory determined that 8,411.3 grams were at least 90% pure thereby meeting the definition of ICE.  In adopting the factual findings contained in the P.S.R., the District Judge found such findings to be in harmony with the evidence presented.  Sentencing Tr. at 3.  Given the Crime Lab results cited in the P.S.R., the ICE finding certainly had an adequate evidentiary basis.  Therefore, absent any rebuttal evidence provided by Ruiz or his counsel, the Judge was entitled to adopt the factual finding in the P.S.R. regarding ICE without any further inquiry or explanation.  *Puig-Infante*, 19 F.3d at 943.  Ruiz alleges that his attorney was deficient in failing to object to the factual finding in the P.S.R.  However, not only has Ruiz failed to explicitly claim that such finding is false, but he has also neither offered nor alluded to the ability to produce any evidence that the finding is false or that his attorney had any reason to believe as much.[2]  Given that Ruiz has failed to meet his burden of establishing that the findings

_____

[2]The District Judge also specifically asked Ruiz if he had any objections to the factual statements contained the P.S.R., to which he responded in the negative.  Although not dispositive, this certainly supports the notion that Ruiz's attorney had no reason to believe that

in the P.S.R. were false, Ruiz's attorney was under no duty to object to the P.S.R. and, therefore, was not deficient in failing to do so.

Ruiz requested that this Court hold an evidentiary hearing addressing the above claims. In the case of a § 2255 motion, "'[u]nless the motion and the files and records of the case [c]onclusively show that the prisoner is entitled to no relief'" the district court is required to conduct a hearing in the matter. *U.S. v. Guerra*, 588 F.2d 519, 520 (5th Cir. 1979) (quoting 28 U.S.C. § 2255)). However, "[a] motion to vacate a judgment and sentence filed pursuant to 28 U.S.C. § 2225 does not automatically mandate a hearing." "When claims for habeas relief are based on unsupported generalizations, a hearing is not required." *Scott v. U.S.*, 598 F.2d 392, 393 (5th Cir. 1979); *see also U.S. v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980) (upholding the denial of an evidentiary hearing in light of the district court's finding that the petitioner's allegations were "conclusory in nature and devoid of sufficient factual substantiation.").

Because Ruiz's *Booker* claim fails as a matter of law due to the fact that he was not sentenced under a mandatory Guidelines scheme, no hearing was necessary on his allegation of ineffective assistance of counsel in such regard. Furthermore, with respect to Ruiz's claim that his attorney was deficient in failing to object to the findings in the P.S.R., he has cited to absolutely no facts suggesting that his attorney had a duty to object to such findings. Therefore, he has offered nothing more than factually unsubstantiated, conclusory allegations to support his claim and, as such, he is not entitled to a hearing on the matter.

### C. Counsel's Failure to Appeal

In his final ground relief, Ruiz asserts that his attorney rendered ineffective assistance of counsel in failing to file an appeal challenging any of the aforementioned issues. In *Roe v.*

---

the statements in the P.S.R. were false.

*Flores-Ortega*, the United States Supreme Court addressed ineffective assistance of counsel in terms of the pursuit of an appeal.  *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S.Ct. 1029 (2000). An attorney's failure to file a notice of appeal cannot be considered ineffective assistance of counsel *per se.*  An attorney who disregards a defendant's specific instruction to file a notice of appeal acts in an unprofessionally, unreasonable manner. *Id*.  A defendant who explicitly instructs his attorney not to file a notice of appeal cannot later claim that his attorney was deficient. *Id.*

"In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, . . . the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal." *Id.*  The term "consult" means ". . . advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.*  Moreover, the Fifth Circuit has stated that "[c]ounsel's duty to a criminal defendant in this context requires more than simply notice that an appeal is available or advice that an appeal may be unavailing.  The Constitution requires that the client be advised not only of his right to appeal, but also of the procedure and time limits involved and of his right to appointed counsel on appeal." *White v. Johnson*, 180 F.3d 648, 652 (5th Cir. 1999).  If an attorney has consulted with the client about appealing, the attorney is only ineffective if he disregards the defendant's "express instructions with respect to an appeal." *Id.*

If counsel has not consulted with the defendant, the question becomes "whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Id*.  The issue then arises "[u]nder what circumstances does counsel have an obligation to consult with the defendant

about an appeal?" *Id*.  As a "constitutional matter" an attorney's failure to consult with a defendant about an appeal cannot always be considered unreasonable. *Id*.  Thus, the Supreme Court rejected "a bright-line rule that counsel must always consult with the defendant regarding an appeal." *Id*.  The Supreme Court stated as follows:

> [w]e instead hold that counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Id*.

The Court explained that in determining if the attorney should have consulted with the defendant, the courts can consider "all the information counsel knew or should have known."  *Id*. A "highly relevant factor" in this determination is if a defendant pleaded guilty or proceeded to trial.  Id.  The fact that a defendant pleads guilty is relevant since "a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.*

The Supreme Court further stated that to show prejudice in this context, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id*.  The Court noted that to prove deficient performance, a defendant could rely on evidence that he expressed an interest in appealing to his attorney.  However, that evidence would not be sufficient to demonstrate that if the defendant had "received reasonable advice" from the attorney about appealing, he would have instructed the attorney to appeal. *Id*.

Ruiz argues that Salomon failed to consult with him following his sentencing regarding an appeal and therefore that the issue in this case is whether he reasonably indicated to Salomon that he was interested in appealing.  Accordingly, Ruiz argues that his September 16, 2005, and

September 19, 2005 letters and his call to Salomon regarding transcripts demonstrated his desire to appeal and thus placed the burden on Mr. Salomon to consult with him about such appeal.

However, the undersigned finds that the evidence in the record indicates that Salomon did in fact consult with him about an appeal.  Salomon testified at the evidentiary hearing that, once the plea agreement was reached, he met with Ruiz to go through the agreement and answer any questions Ruiz might have.  He testified that, during this meeting, he explained that an appeal would not lie from anything that occurred unless something quite untoward happened during the sentencing process.  He further testified that, on the day of Ruiz's sentencing, he advised Ruiz that there was really nothing to appeal regarding his case and also that he had ten days in which to appeal his judgment.  As Ruiz has offered no evidence contradicting this testimony, the evidence in the record indicates that Salomon discussed with Ruiz the possibility of an appeal and the time limit for doing so.  Moreover, the District Judge specifically informed Ruiz of his right to appeal and his right to appointed counsel at his sentencing.[3]  Sentencing Tr. at 6; *see e.g., U.S. v. Camargo*, 119 Fed.Appx. 670, 672 (5th Cir. January 14, 2005) (indicating that a judge's statement at sentencing that the defendant is entitled to appointed appellate counsel is sufficient to inform the defendant of such right)), and the Court informed Ruiz of his right to appeal and his right to court-appointed counsel.  Accordingly, the undersigned finds that Salomon adequately consulted with him regarding an appeal in his case and that Ruiz was sufficiently informed by his

---

[3]Salomon testified that he could not recall if he informed Ruiz of the 30-day period in which an out-of-time notice of appeal may be filed for good cause shown, but that he usually informs his clients of such.  Ruiz has cited to no authority for the proposition that an attorney is ineffective for failing to inform his client of the 30-day good cause time period. Moreover, Ruiz has neither stated nor offered any evidence that his attorney did not inform of the 30-day period.

attorney and the Court of his appellate rights.[4]

Furthermore, Salomon testified that, at the time of the aforementioned consultation, Ruiz did not request that he appeal. Tr. at p. 10. This is confirmed in a letter written to Ruiz by Salomon dated September 8, 2005, two days after Ruiz's sentencing, which states the following: "As you are aware . . ., there are certain time limits for you to appeal your matter. You have not requested an appeal and I have not recommended one. In light of how your matter turned out, I can see nothing to be gained by an appeal. I can see no issues to appeal." Morever, Salomon testified that, prior to November 2005, he did not recall ever being expressly asked by Ruiz to appeal.   Defendant's Ex. B-3.

Ruiz relies on a letter written by Salomon dated September 16, 2005, which states the following:

> I am in receipt of your correspondence. I am not in a position to take an appeal of your matter for several reasons. First, I have not been retained to do so. As a result, I am not in a position to take the steps you request. . . . More importantly, I can see no issues of any substance to pursue on appeal.

------------------------------

[4]Ruiz contends that, after he wrote to Salomon expressing concern about his traffic stop, asking for transcripts to look over mistakes, asking for advice about what to do considering the attorney's opinion that an appeal would be meritless, and asking if the attorney would be representing him in any other matter that might come up, Salomon should have again informed Ruiz that he had until September 22, 2005, to file an appeal or, at most, until October 24, 2005, and that he had a right to court-appointed appellate counsel. However, again, the evidence establishes that Salomon consulted with him around the time of his plea nd sentencing regarding an appeal and informed him of the ten-day time limit for doing and that the sentencing judge informed Ruiz of his right to court-appointed appellate counsel, and Ruiz has cited no authority that would require Salomon to repeatedly consult with him about an appeal when there is no evidence indicating that he ever expressly requested an appeal following the initial consultation. Ruiz also contends that Salomon comments, in both oral and letter form, erroneously suggest that Ruiz did not even have the option of appealing his sentence. However, advising one's client that there are no non-frivolous grounds for appeal is not equivalent to telling the client that he does not have the option of appealing. Salomon was entitled, even duty-bound, to convey his opinion regarding the possibility of a successful appeal and, as such, his choice to do so cannot now be used by Ruiz as an excuse for not appealing in a timely fashion.

Ruiz argues that Salomon's comments indicate that he clearly interpreted some type of correspondence from Ruiz as a request for an appeal.  However, significantly, Salomon testified that he could not say what correspondence he was responding to when he wrote the letter, and Ruiz has proffered no evidence indicating the contents of such correspondence.  While the letter could certainly be interpreted as a response to some type of inquiry by Ruiz pertaining to an appeal, without any evidence indicating what correspondence the letter was in response to, there is nothing in the letter that definitively demonstrates that Ruiz *expressly* asked Salomon to file an appeal.

Moreover, Salomon testified that he had no recollection of Ruiz ever expressly requesting that he appeal, and Ruiz has offered no evidence contradicting this testimony other that his bare allegations that he did so.  Salomon also testified that he thought the date on the letter might be typo and therefore that the letter could possible have been written subsequent to September 16, 2005.  He testified that, "reading between the lines," the letter could be in response to Ruiz's letter dated September 19th in which Ruiz inquires about transcripts, asks the attorney what he should do considering the attorney's recommendation that there were no grounds for appeal, and asks Salomon whether he will still represent him in any other matter that might come up in the case.  Finally, Salomon testified that the letter may have been in response to a message he received regarding Ruiz's request for transcripts and that he had no recollection of a phone call concerning an appeal.

Therefore, given the numerous possible interpretations of the September 16, 2005 letter, the fact that nothing in the letter itself definitely indicates that Ruiz expressly asked Salomon to

appeal, and Salomon's testimony that he had no recollection of Ruiz asking him to appeal,  the

undersigned finds that the letter is not sufficient to demonstrate that Ruiz expressly asked

Salomon to appeal.  Ruiz argues that his request for transcripts of his proceedings should have

indicated to Salomon that he wanted to appeal; however, Salomon testified, and the undersigned

agrees, that the fact that a client asks for transcripts in no way constitutes an express request for

an appeal.

Thus, according to the evidence in the record, Ruiz did not expressly ask Salomon to file

an appeal until November 2005.  Given that November 2005 was well after the time period for

filing a direct appeal had lapsed, Ruiz cannot now argue that Salomon was ineffective for failing

to file such an appeal.  Accordingly, Ruiz has not demonstrated ineffectiveness of counsel in this

regard and it is recommended that his motion on this ground be DENIED.[5]

----

[5]Ruiz cites three cases as support for his contention that Salomon was ineffective for
failing to file an appeal despite being told to do so.  However, a review of the facts of these cases
indicates that they provide no such support.  In *U. S. v. Camargo*, 119 Fed.Apps. 670 (5th Cir.
Jan.14, 2005), the Fifth Circuit vacated the denial of a § 2255 motion in which the defendant
claimed that his attorney was ineffective for failing to advise him of his appellate rights, failing
to consult with him concerning an appeal, and failing to file a notice of appeal.  The court found
that the defendant did not request an appeal and that, although the sentencing judge informed the
defendant that he was entitled to proceed *in forma pauperis*, he did not explain the meaning of the
of that term.  *Id.* at 672.  Because the defendant's counsel stated that he did not explain the
meaning of the term nor did he inform the defendant of his right to appointed counsel, the court
found that the defendant was not properly advised of his right to appointed appellate counsel.  *Id.*
However, in the case at bar, the sentencing court advised the defendant of his right to appointed
appellate counsel.  Sentencing Tr. at 6.  In *U.S. v. Gavin*, 260 F.3d 613, 2001 WL 650510 (5th
Cir. June 21, 2001), the Fifth Circuit vacated the lower court's denial of the defendant's motion to
vacate and the matter was remanded for an evidentiary hearing because there was no evidence in
the record that the defendant had been advised that a notice of appeal had to be filed within ten
days of the entry of the judgment of conviction.  *Id.* at *1.  The defendant's attorney had refused
to file an appeal, and the defendant had been advised of his right to appellate counsel.  Ruiz's
attorney, however, testified that he informed Ruiz of the ten day deadline and Ruiz has proffered
no evidence contradicting this testimony.  Finally, in *White v. Johnson*, 180 F.3d 648, 656(5th
Cir. 1999), the attorney failed to advise the defendant of the time period for filing a notice of

Although the undersigned finds that Ruiz's ineffective assistance of counsel claims are insufficient to establish 'cause' and 'actual prejudice,' such finding does not automatically end the inquiry into whether Ruiz is entitled to § 2255 relief.   Even if a defendant cannot establish "cause" and "prejudice," pursuant to a narrow exception, a defendant may be entitled to relief under 28 U.S.C. § 2255 if the error of a constitutional nature would result in a complete miscarriage of justice. *Murray v. Carrier*, 106 S.Ct. 2639, 2649 (1986); *Bousley v. United States*, 118 S.Ct. 1604, 1610 (1998); *United States v. Ward*, 55 F.3d 412, 414 (5th Cir. 1995); *Shaid*, 937 F.2d at 232; *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992); *United States v. Hicks*, 945 F.2d 107, 108 (5th Cir. 1991).  Such a miscarriage of justice would result if the error caused the defendant to be convicted of a crime of which he is innocent.  *Shaid*, 937 F.2d at 232.  Without a "colorable showing of factual innocence," the defendant fails to show a fundamental miscarriage of justice.  *United States v. Flores*, 981 F.2d 231, 236 (5th Cir. 1993); *McCleskey v. Zant*, 499 U.S. 467, 495 (1991).  Therefore, this Court will vacate Ruiz's sentence ". . . only if he can demonstrate, based on all the evidence, that 'it is more likely than not that no reasonable juror would have convicted [him].'"  *U.S. v. Torres*, 163 F.3d 909, 912 (5th Cir. 1999) (quoting *Bousley v. U.S.*, 118 S.Ct. 1604, 1611 (1998)).

In his traverse to the Government's answer, Ruiz asserts that he has met this standard because he did not admit nor plead to any facts involving ICE.  However, the fact that Ruiz did not plead to such facts falls far short of a claim of factual innocence, and Ruiz has alleged no facts which even suggest that he is factually innocent.  Therefore, it is recommended that, insofar as his claim relies on such a claim, it be denied.

---

appeal.  Again, in the case at bar, the evidence supports the finding that Ruiz's attorney advised of the time period for filing an appeal.

## CONCLUSION

For the reasons stated above, it is recommended that the defendant's motion be **DENIED.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 12th day of June, 2007.


KAREN L. HAYES
U. S. MAGISTRATE JUDGE